The Fort DeSerte Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. Good morning, the court is taking up case number 4241143, Jacqueline Dunbar as special administrator of the estate of Bruce Smith versus Wade D. Carlson, MD, an OSF multi-specialty group, and counsel for the appellant, if you please state your name. Patrick Anderson. Thank you. Counsel for the appellate? Joseph Kulig on behalf of the appellate. And counsel for the appellant, you may proceed with your argument. Thank you, your honor. It pleases the court, your honor, counsel. Again, my name is Pat Anderson. I represent the estate of Bruce Smith. The plaintiff is asking this court to reverse the decision of the trial court, which granted summary judgment in favor of the defendant based on the purported lack of evidence of proximate cause. This is a medical malpractice case where plaintiff is alleging the defendant, Dr. Wade Carlson, deviated from the standard of care in two ways. The first is by failing to prescribe a statin medication to control Bruce Smith's blood pressure. The second deviation is failing to make a referral to urology to address Bruce's kidney issues. Plaintiff alleges that as a result of those deviations, Bruce suffered a heart attack and died in August 2017. I am intending to discuss three main areas, first of which is the evidence of proximate cause with respect to Dr. Carlson's failures to prescribe statin medications. The second is the evidence of proximate cause with respect to Dr. Carlson's failure to make a urology referral. And the third is the standard of care testimony of the plaintiff's experts. Now, this was not an issue raised below and was not a basis for the trial court's grant of summary judgment. But the defendant has raised that as an issue in this court. So plaintiff will address it before getting to the expert testimony. It's important. Why should we consider it? I'm sorry, what? If they haven't raised it, why should we consider it? Well, I agree with the courts. You know, I agree with the question. I don't know that the court should consider it. We addressed it out of an abundance of caution, recognizing that the court can affirm on any basis in the record. I do not believe it would be fair to grant that because it was not litigated on that basis. But just out of an abundance of caution, we we address the issue because it was raised here with respect to the expert testimony itself. When analyzing it is important to remember that on summary judgment, the pleadings and the evidence have to be interpreted in the light most favorable to plaintiff and strictly against the defendant. And the reasonable inferences must be drawn in plaintiff's favor. That summary judgment can only be granted if there is no set of facts on which a plaintiff would be entitled to recover. So if there's even one viable theory of liability, summary judgment was improper and reversal should be the outcome. Is there any Illinois case that specifically addresses this gap in proximate cause theory as it applies to summary judgment? There are a number of fatal gap cases that do involve a summary judgment. The fatal gap cases that defendants point out, though, are different from the cases that plaintiff cites. In the fatal gap cases that are referenced, are there any that involve a set of facts similar to this as opposed to a circumstance where there's no expert testimony? Yes. Or the experts have indicated that they had to speculate in order to reach a conclusion. Exactly. There is those cases are unlike this case because of those distinctions. In those cases, there was no expert testimony establishing any causal link about what would the treatment would have been or what the outcome of that treatment would have been. Those cases also defendants fatal gap cases, the Aguileras, the Townsend, the Weidenbeck, those all involved cases where the treatment that was the plaintiff's experts opined should have been done was never completed. It's not a case where that treatment was delayed. In this case, the treatment that the urology referral to address the hydronephrosis, to address the kidney issues, that treatment was delayed. It wasn't deterred altogether. He ultimately underwent that treatment. And so this case is much more like the Borowski, Johnson, Galeno, Heminger, the Vanderhoof that plaintiff cited where there was a delay in treatment that ultimately occurred. And that delay in treatment caused a lesson or increased the risk to the patient or decreased the effectiveness of the treatment. So this is not a case where we don't know what the treatment would have been. We know what the treatment would have been because the treatment was given. The treatment was given when the plaintiff was referred to the urologist, a Foley catheter was placed, the obstruction was cleared. And it is Dr. Nelson's opinion that if that treatment would have been given earlier, it would have helped prevent the heart attack. Dr. Nelson specifically testified that Bruce's hydronephrosis, which improved in May and June, had it been treated earlier, would have not led to the kidney damage that resulted in the need to stop the Xarelto. So the cardioprotective effect of that would have been there. So it's Dr. Nelson's opinion that earlier treatment of the hydronephrosis would have led Bruce to be able to continue taking Xarelto, which would have had a protective effect and would have decreased his risk of a heart attack. And so the fatal gap argument the defendant's making is unlike the case. This case is unlike the cases defendant is relying on for that. And it's much more like the cases plaintiff cited where there was a delay in treatment that lessened the effectiveness of treatment or increased the risk of harm. The other point I want to make about those cases is that the defendant did not address them. Defendants didn't address any of the delay cases. Borowski, Johnson, Buck, Perkey, Vanderhoof. They didn't address any of those cases in their response. And so they've conceded that issue. So but the larger point is that what distinguishes this case from the fatal gap cases is both Dr. Nelson's expert testimony, the treatment that Dr. Padilla actually did, and the fact that this was a delay in treatment that was ultimately given and plaintiff's expert testified if that had been given earlier, it would have decreased Bruce's risk of a heart attack. So that is is is the major those are the major distinctions between defendants fatal gap cases and this one. The other thing I want to point out with respect to the fatal gap cases is that argument applies only to the failure to make the urology referral. There is no referral needed to for the first deviation. Plaintiff alleges defendant Dr. Carlson was managing the Bruce Smith's blood pressure. Plaintiff alleges that Dr. Carlson and Dr. Carlson alone should have prescribed a statin medication, that he did not prescribe a statin medication, and that if he had prescribed that statin medication, it would have had time to have an effect on decreasing Bruce's risk of a heart attack. It is fundamental that in a medical malpractice case, expert opinion held to a reasonable degree of medical certainty furnishes an adequate basis to find causation. It's not the court's role on summary judgment to determine if the evidence is strong enough on a medical malpractice case. We look to determine whether the opinions are there. In this case, the required opinions are there. It the plaintiff's experts gave the causation opinions. And essentially, if you look at defendants response brief, they essentially concede those opinions are there. They don't dispute that plaintiff's expert cardiologist testified that statin therapy, if timely prescribed, would have had an effect on reducing the cardiovascular risk. What defendants primary argument is, is that the plaintiff didn't present reasoned or supported expert testimony on which the jury could conclude proximate cause. But for one, the bases and reasoning for an expert's opinion go to the weight of the opinion, not its sufficiency. And the weight of the opinion is for the jury. And so the reasoning for Dr. Budoff's opinions with respect to the statin medication, that's for the jury to decide. Beyond that, it's perfectly sound. He explained that his basis for his opinion is essentially the time course that it takes for statins to take effect. He testified that statins stabilize plaques rapidly, so there's less plaque to rupture, leading to less heart attacks. He testified that statins have been shown to produce a reduction in risk in cardiovascular events in as little as 30 days, and that Bruce's cardiovascular risk would have been reduced within approximately 30 days or four weeks of starting the statin. So that means if Dr. Carlson had prescribed the statin at the January 27th visit, Bruce would have seen a reduction in his risk beginning in late February. And he would have had five to six months of beneficial effect before August, which is when he suffered his heart attack. Similarly, if Dr. Carlson had prescribed Bruce a statin at the February 27th visit, he would have received a beneficial risk reduction by late March or early April, which still would have given him three to four months of beneficial therapeutic effect from the statin therapy. So there would have been enough time for Bruce to begin experiencing the beneficial effects of the statin as long as it was started more than four weeks before the heart attack in August. Dr. Budoff explained that it would have helped stabilize Bruce's plaque, lower his inflammation, lower his cholesterol, which would have, in turn, lowered his risk for a cardiovascular event, which is why I ask this question. Why is it necessary for you to prove all of these things at the summary judgment phase? It's not. Again, out of abundance of caution, we argued, we set forth the reasoning for Dr. Budoff's opinion. But again, as I started this argument off, the reasoning underlying the opinion goes to its weight, not its admissibility, the weights for the jury. So defendant acknowledges it's in there. My point is their attack on the bases and the reasoning, those attacks are unfounded, but it's not an attack to be made in this court. Those are arguments to be made in the trial court. But just out of caution and wanting to address the argument raised, the bases are there. The reasoning is sound. And the opinions are in the case. Summary judgment should not have been granted on this record. The opinions are in there. Dr. Budoff even quantified the risk and said the 50 to 60 percent risk reduction. So the opinions are there. No one disputes the last chance doctrine, do they? No, no. Defendants actually acknowledge the veracity of it or the continued viability of it in their brief. So would you agree that under the last chance doctrine, the plaintiff must only show with a reasonable degree of medical certainty that the malpractice lessened the effectiveness of the treatment to the plaintiff? I absolutely agree. Yeah. Plaintiff is not required to show a better outcome, only that defendant's negligence deprived plaintiff of an opportunity to undergo treatment that could have been more effective if given earlier. So would you agree that the plaintiff need not prove that they would have enjoyed a greater than 50 percent chance of survival or recovery absent the alleged malpractice of the defendant? I agree. Plaintiff is not required to quantify the risk. Do you agree that both of your experts has indicated that in their professional opinions to a reasonable degree of medical certainty that had there been another course of treatment that the decedent was more likely than not to have either not suffered the heart attack or had survived? Yes, I agree with that completely. So why do you have to show more to get past the summary judgment? We don't. We don't. My point is that more is there. So there's more than enough here that this case should not have been decided on summary judgment. Plaintiff's experts opinions are there. There's not much more to say. That's the law. It's a simple case in a medical malpractice case. That's what plaintiff has to do. We have to present experts. We have to disclose the expert testimony on breach and causation. And we did that. This is not a case that should have been decided by summary judgment on this record. The opinions are there. Even if we assume the application of the gap, did that then eliminate all your claims of medical negligence? No. And that's why I began this argument by saying we had two independent claims of negligence. Either one of those, if there's causation for either one of those, summary judgment was inappropriate. And that's why I indicated that the defendant's fatal gap argument applies only to the referral. Even if it were correct, even if they were right on all of that, which we dispute that they are, even if they're right on all of that, plaintiff's allegation that Dr. Carlson failed to prescribe statins and that deviation increased the risk of harm, increased the risk of this heart attack, decreased the effectiveness of treatment. That line of liability is not subject to that argument even. So even if defendant's correct, summary judgment should be reversed based on the statin argument. So I have more prepared. I don't want to belabor the issue. The opinions are there. We could go into the specifics. I don't want to reread them. They're listed in the brief. They're in the record. The standard of care arguments are meritless. I don't know that they even should be addressed on this appeal. But if you read Dr. Nelson's deposition, defendant's argument with respect to that is essentially that he argued or that he could only come up with an opinion that amounted to Dr. Carlson should have treated the patient. That's not a fair representation of Dr. Nelson's deposition testimony. He was asked questions about standard of care. He was asked all sorts of questions about the relationship between medical judgment and the standard of care. He testified what even the defendants recognized that his testimony is replete with statements about what Dr. Carlson should have done and failed to do. He was asked lots of questions with feedback that were couched in terms of the standard of care. So the standard of care testimony is there. I don't think the argument was litigated in the trial court. So I don't think that is a fair issue. But even if it were, the argument doesn't have merit. Summary judgment needs to be awarded with caution and to avoid preempting a litigant's right to a trial by jury or to present the factual basis where material disputes exist. Again, this case is pretty simple. The law requires us to provide expert testimony establishing proximate cause. We have the expert testimony. It's in the record. Summary judgment should not have been granted on this record given Dr. Nelson's testimony and Dr. Budoff's testimony. Their qualification, the reasoning for their opinions, the basis for their opinions are for the jury to weigh whether they're sufficiently reasoned as a jury question. I would ask this court to reverse the trial court's decision to grant summary judgment in defendant's favor and remand the case back to the circuit court for further proceedings. Thank you. Thank you, counsel. You'll have time in rebuttal. Appreciate it. Your argument, please. Thank you, Your Honor. May it please the court. The trial court correctly granted summary judgment for the defendants here. Mr. Smith died of a heart attack on August 23, 2017, nearly three months after the last of his three visits with Dr. Carlson. In those three months between his last visit with Dr. Carlson and his death, he saw two specialists. He saw a urologist and he saw a nephrologist. And both of these specialists were, Dr. Carlson referred Mr. Smith to these specialists. I'm sorry. Before we get too far into this, can you explain to me the reasoning for the court's ruling as the court expressed? It was a lot of brevity in the court's ruling. So explain to us why the court ruled the way in which it did. Well, according to, I don't believe there is a written order as to why summary judgment was granted. Based on the hearing, the transcript of the hearing, I believe the court said that they found the defendant's arguments well-founded and they granted summary judgment. I don't know if the fact that the trial court didn't put forth what its reasoning was matters in terms of whether the judgment is affirmed. This court's review is de novo. This court reviews judgments, not reasoning. And therefore, if there's any basis to affirm the summary judgment, this court can do that. And that includes reasons that might not have been considered by the trial court and reasons not brought up by the parties in the court below. So in response to the question about the standard of care and the breach of duty argument, even if those weren't explicitly argued, if this court finds that defendant's argument as to the testimony just wasn't there as to the standard of care or breach, it can affirm on that basis. Did you ever raise those? Excuse me? Did you ever raise those? Have I ever? Did you raise those issues before the trial court? We did not raise the... Okay, so if you haven't raised them before the court, the court hasn't had an opportunity to address them. The plaintiffs haven't had an opportunity to address them. You raised them now for the first time here. Why should we even be listening to that? Because the Supreme Court, it's well established that this court can consider arguments that weren't raised in the trial court below that are raised by the appellees. And the appellant did have a chance to respond. Not under every circumstance. You can't just raise an issue new on appeal, and then we just go with that. And that's if we're going to affirm the trial court. But that's what we're seeking. We're seeking affirmance of the trial court. So I understand that. The court can rely on any reason to affirm the judgment. It's a little different if this court were to reverse the judgment based on the trial court. But the law is well established that it's de novo review, and you can consider any reason that is brought up, even if it wasn't brought up below, to affirm the summary judgment. Well, counsel, let me ask you this. And just to sort of preface where I am, you've got potentially viable medical malpractice claims and a summary judgment motion. And the court really makes no findings other than I find for the defendant. So in light of it being a situation where there's potentially explainable theories either way, it's difficult for this court to adjudge the court's ruling when there's no real findings. It's just I find in favor of the defendant. Goodbye. How do you respond to that? I mean, I understand the difficulty that puts this court in, but I think the practicality is that there are a lot of trial court orders that simply grant summary judgment and may not give all the reasons that they grant it for. And as I mentioned before, the job is to review the judgment and not the reasoning. Would the reasoning be helpful? Absolutely. But in affirming the judgment, this court is to consider the arguments that are put forth by the parties. And if there is an argument that does support affirming it, the judgment, then that should be relied upon to affirm the judgment, because it doesn't make sense to remand the case back to the circuit court for an argument that then the plaintiff can't get to the I think that's the reasoning behind that. Well, the courts put you in this position, but it seems to me that your remit is to support or convince us and DeNovo review that there wasn't a potentially viable claim on behalf of the plaintiffs, because I don't know what the court was thinking other than accepted your position in total. But it seems to me there's medical evidence of viable claims. Well, yes, yes, Your Honor, it is our job to convince you that there is no viable claim, and we believe we've done that. As the plaintiff had said, their theories are twofold. The first theory is a failure to refer to urology, and the second theory is a failure to prescribe statins. Now, on the first theory, I want to I want to note that to the extent their theory is that Dr. Carlson did not refer Mr. Smith to urology, that theory fails right out of the gate, because it's undisputed in the record that Dr. Carlson did refer Mr. Smith to urology at the second visit in February, and per that referral, Mr. Smith then did go see Dr. Padilla, the urologist he referred him to. So to the extent they're saying that he was negligent because he didn't refer Mr. Smith to a urologist, that fails right out of the gate, because it's undisputed there was no breach. My understanding, you know, was that they are trying to say that the referral should have been more urgent, or it should have been a stat referral, and to the extent that's their theory, and they haven't limited it here on oral argument, the evidence isn't there, because the whenever a plaintiff argues that the negligence comes from, well, they should have referred the patient to a specialist, and then the specialist could have done this, and that would have decreased the risk of the harm. The plaintiff has to set forth what the specialist would have done had that referral occurred at the time that they say it should have. Counsel, if I can interrupt you there, though, when we talk about this, and I know in your brief you set forth that there would be no evidence from which a jury could determine that this failure for the timely referral, if we want to refer it to Dr. Padilla or another urologist in January or February, you're suggesting there's no evidence from which a jury could be advised, but why can't we consider the reasonable inference as to the treatment that Dr. Padilla ultimately provided? I mean, I think it's an inference. I don't think it's a reasonable inference to infer that she would have provided the same exact treatment in February of 2017 than she did three months later. To do that is to basically be asking the jury to make an evaluation of the medical treatment the doctor would have given three months earlier. That's not within the jury's knowledge. You have to have some sort of expert testimony to guide them on that. And as just one example, Mr. Smith. That may be true if you're proving it, but we're at the summary judgment stage. Hang on. The argument for the trial court, your brief, your argument here, very subtly bleeds the proof necessary to prove the elements and establish liability. We agree we're at a stage that we're at. This is summary judgment. Is there a genuine issue of material fact? That's all the trial court had to decide. We've got expert doctors, expert physicians who've said, told us what would have or could have been done. And in fact, they've got a record of what actually happened to back that up. Then they both indicated that in their professional opinions, it was more likely than not that there would have been a different outcome. There are no conflicting experts to dispute that. Why doesn't that automatically make it a genuine issue of material fact available for a jury to decide? All of these things that you raise now are very good points to raise at trial. But what do they have to do with summary judgment? Well, I mean, I agree we're at summary judgment. And we're not saying that the plaintiff has to absolutely prove their case here. But summary judgment, you have to have evidence from which the jury could find for the plaintiff. And what we're saying is that, yes, there is the testimony from Dr. Padilla as to the treatment. You've bled it into the liability point again. No, you don't have to establish that as summary judgment. Summary judgment, you merely have to establish that there is a genuine issue of material fact. That's it. Well, we don't believe that testimony from May of 2017 creates a genuine issue of material fact as to February of 2017. That's a weight issue that would go to the credibility of the physician before the trier of fact. You're going to proof again. See, this is the subtle, I mean, it was raised at the very beginning of the argument in front of the trial court. All roads to plaintiff's claims against Dr. Carlson relate back to this failure to refer nephrology or urology. Well, that's not true because there were totally independent claims. Secondly, you, not maybe you necessarily, but counsel for the defendants, was able to convince the trial court that they had to prove something at this stage. And I have a real problem with both the arguments in the brief, the arguments before the trial court, and the arguments today because you very subtly move into the evidence necessary to establish the claim. And we're not even there. We're just at summary judgment. What is there about the record that we've got in front of us that should not have allowed for a denial of the motion for summary judgment? You've got experts unrefuted who've indicated in their professional opinion, here's what could have happened. And in fact, it did happen. And what happened? He actually got better. But then they also opine that because these things didn't occur, they find it more likely than not. That's all they have to show, at least at this stage, if not even at trial. That the outcome would have been different. He lost his chance. That's the whole issue here. He lost the opportunity. And under a lost chance theory, I would suggest to you, absent conflicting expert testimony. Once you've got a qualified expert who renders an opinion, that's all you need to get past summary judgment. Well, your honor, I mean, our position is that the opinions given by the experts here, I understand that a lot of things go to the weight of the expert's opinion, but there's still a threshold that the expert has to meet. And an expert just can't say, well, if he would have been referred earlier, he would have been better. That's very similar to testimony from Townsend, where the expert said, well, if the plaintiff would have given or would have run some imaging tests, then a urologist could have come in and relieved the kidney stone. But they didn't say what that relief would be. And the appellate court said, well, in the absence of that testimony, you can't have proximate cause. There's a gap. And that's the same here. Is that... But counsel, if I may, a lot of the cases you cite in your brief, aren't they dealing with situations where we're talking about a JNOV or a directed verdict? And isn't that a very different, what we're evaluating, if you will, because we're at the summary judgment stage, just as Justice DeArmond has indicated? Well, I believe the Supreme Court has said that when you're looking at the facts that the directed verdict and the summary judgment standards are largely the same. And to make distinctions of cases based on, as long as you're handling the standards correctly, but to make a distinction on a summary judgment case based on the fact that maybe a case that's dead on involved a directed verdict is incorrect. So it's our position that, you know, we understand that a lot of the cases we cite are directed verdict, but depending on the situation there, as long as you look at, view it from the right angle, you can use those cases, the summary judgment and directed verdict. What specific angle would that be, counsel? Well, making sure that you're taking all the facts in favor of the non-movement in connection with that motion. And for Townsend, there was a jury verdict for the plaintiff. And so that JNOV by the defendant was denied, it went up. And so on review, you're taking all the facts and the inferences in support of the jury verdict, which was for the plaintiff, which is the exact same thing that you're supposed to do at summary judgment. You take all the reasonable inferences in plaintiff's favor, you resolve any, or if there is a disputed fact that's genuine, you resolve it in the plaintiff's favor. So even though it's a different procedural motion, the standards are largely the same in those types of cases. Substantively different. You can claim that they're procedurally the same, they're substantively different. One is to establish the existence of a question of fact, the other is to establish an element sufficient for liability. Those are two distinctly different things. One gets you in the door, the other one makes you a winner. And your honor, we believe that the expert testimony here doesn't get the plaintiff in the door. Well, you presented no testimony to refute it. You've got these experts who've all said that they've got the qualifications based upon their professional opinion to a reasonable degree of medical certainty. This is what could have happened, should have happened, and had it happened, it is more likely than not the defendant's outcome would have been different. Summary judgment, boom, done. What more do you need? You need the expert opinions to have a reasonable basis to provide that evidence. Well, absent an expert to say they don't, this is what you got. We're not the experts, and the trial court wasn't the expert. We don't weigh the quality of the expert's testimony unless, in fact, he says, well, since I am from Mars, this is how we do it there. We got the expert's testimony. There's no contradictory testimony whatsoever. We don't weigh the quality of that evidence. We determine whether there's enough there to at least raise a question of fact. You cite all of these cases that deal with directed verdicts and judgment NOVs where the decision has been made that not only do they have enough to get in the door, they've established liability. There's where the quality of the expert has been tested. The expert's opinion has been tested. The conflicting experts have rendered an alternate opinion, which has then given the jury something, another side to look at. But I find it very interesting in a lost chance medical negligence claim, where the only expert testimony is from the plaintiff, how you can raise at the summary judgment stage a claim that there's a gap in proximate cause when you presented no evidence of what that gap was. Yes, Your Honor, I understand your point. I believe that we have presented that gap is there even without the expert testimony. Before I conclude, I do want to just turn to another issue that we raised regarding the referral argument, and that's that the plaintiff didn't plead the timely referral theory in her complaint. As we pointed out, the allegation is simply that Dr. Carlson did not refer Mr. Smith to urology. As I noted before, he did, in fact, refer Dr. Smith to, I'm sorry, Mr. Smith to urology. So to say that that's a basis for negligence, that's not the case. And the Supreme Court and the appellate courts have said that at summary judgment, your claims are limited to your complaint, and you can't amend them in later briefing. You have to actually go and amend your complaint. So the complaint says failure to refer to urology. That's one reason why Dr. Carlson was negligent. The undisputed record shows that he did refer Mr. Smith to urology. And so on that basis alone, too, they can't expand their theory. But on that basis alone, that summary judgment can be granted on that basis, and it shouldn't be reversed to address that claim, even regardless of what happens to the theory based on the blood pressure, I'm sorry, the failure to prescribe statins. For those reasons, I would request that you affirm the judgment. Thank you. Thank you, counsel. Counsel for the appellant, rebuttal, please. Thank you. Just briefly, regarding the pleading issue counsel just raised. First of all, it wasn't raised in the trial court. Again, it wasn't a basis for the trial courts granting the summary judgment. So again, I don't think it's properly before the court. But in any event, ascribing defendants' interpretation of the pleadings would be reading the pleadings in defendants' favor and strictly construing them against the plaintiff, which is the opposite of what is supposed to be done on summary judgment. Moreover, Dr. Carlson did fail to send him to urology. On January 27th visit, plaintiff alleges he should have sent him to urology. He did fail to send the patient to urology that day. The plaintiff pled the theory that that argument is without merit. With respect to the rest of it, I will keep it brief. Your honors are correct. The procedural posture of this case is important. There is medical evidence of viable claims. That is the key that gets us past summary judgment. The evidence is there. The opinions are in this case. This court should reverse. Thank you. Thank you. The court will take this matter under advisement and the court will stand in recess.